UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GOODLEAP, LLC, a California limited liability company,

Plaintiff,

v.

SOLAR CANCELLATION RESOURCE CENTER LLC, a Wyoming limited liability company; and CONSUMER ADVOCACY LAW GROUP, a Nevada law firm,

Defendants.
_________________________________/

Case No. 6:26-cv-01072-PGB-NWH

**DEFENDANTS' MOTION TO DISMISS AND TO TRANSFER VENUE**

Defendants, Solar Cancellation Resource Center LLC ("SCRC") and Consumer Advocacy Law Group ("CALG" and together with SCRC, "Defendants"), through counsel and pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(3), 28 U.S.C. §§ 1404(a) and 1406(a), move to dismiss the Complaint filed by Plaintiff, GoodLeap LLC ("GoodLeap" or "Plaintiff") and to transfer venue, and state:

**SUMMARY OF THE ARGUMENT**

At its core, this is a dispute between a lender and its own borrowers over unpaid loans, repackaged as sprawling litigation against those borrowers' counsel

and a marketing company, through which the lender asks this Court to bar that counsel from advocating for its own clients' rights.

GoodLeap, a residential solar lender, alleges that its existing borrowers encountered SCRC's purportedly false advertisements and retained SCRC and CALG, that CALG sent demand and cease and desist letters to GoodLeap, and borrowers stopped paying their loans. By GoodLeap's own allegations, every affected borrower was already bound by an existing loan agreement before encountering SCRC's advertising, so no purchasing decision was diverted, and the Complaint does not identify a single advertisement that instructs a borrower to stop paying GoodLeap. GoodLeap's own timeline undercuts the causal link it needs: it concedes that at least one borrower stopped paying before CALG ever sent a letter on her behalf, and as to the rest, it alleges that defaults occurred "right around the time" a letter was sent, with no dates or individualized facts. Sequence is not causation, and a complaint that pleads mere temporal proximity cannot plausibly allege Defendants caused the conduct of which GoodLeap complains.

Counts I through IV all fail because GoodLeap's own Complaint contradicts its causation theory. The Lanham Act requires injury flowing *directly* from the *challenged advertising*, not a borrower's independent default, and that remoteness also places GoodLeap outside the Act's "zone of interests" as a creditor whose borrower stopped paying, not a competitor whose sale was diverted (Count I);

Lanham Act contributory liability cannot survive a deficient direct claim (Count II); a borrower's independent choice does not satisfy FDUTPA's causation requirement (Count III); and Florida law requires active procurement of a breach, not mere coincidence in timing, to establish tortious interference with a contract (Count IV).

The remaining counts fail on independent, threshold grounds: Count V (for conspiracy) fails because it requires an underlying actionable wrong, pleads only an ordinary business relationship dressed up in conspiracy language, and fails to satisfy the applicable heightened pleading standards for both conspiracy claims and claims sounding in fraud; Count VI because GoodLeap failed to allege the Florida Supreme Court has determined the specific conduct at issue constitutes unauthorized practice of law, and because GoodLeap was never SCRC's purported client; and Count VII, for declaratory judgment, because it is purely derivative of Counts I through III and adds nothing the Court is not already asked to resolve. For these reasons, and as set forth more fully below, the Complaint should be dismissed.

To the extent the Complaint is not dismissed, the Court should transfer venue to either the United States District Court for the District of Nevada or Arizona. This action has no meaningful connection to the Middle District of Florida. None of the parties reside in Florida, the alleged conduct underlying Plaintiff's claims did not wholly originate in Florida, and the overwhelming majority of witnesses and relevant evidence are located in or near Arizona and Nevada. Transfer to Arizona or

Nevada will therefore serve the convenience of the parties and witnesses and will promote the interests of justice.

**SUMMARY OF FACTUAL ALLEGATIONS IN THE COMPLAINT[1]**

1. GoodLeap is a residential consumer lender that finances solar energy systems with homeowners nationwide. (FAC ¶¶ 22–25).[2] Its principal place of business in Roseville, California. (FAC ¶ 7).

2. CALG is allegedly a Nevada law firm whose attorneys are not licensed to practice law in Florida with its principal office in Las Vegas, Nevada. (FAC ¶ 16).

3. SCRC is allegedly a marketing, sales, and referral company that advertises solar loan cancellation services to consumers nationwide, including in Florida. (FAC ¶¶ 26–39). SCRC is a Wyoming limited liability company with business operations in Arizona. (FAC ¶ 15).

4. GoodLeap alleges that, after attracting consumers through advertisements, SCRC charges upfront fees, instructs or encourages customers to stop making payments on their GoodLeap loan agreements, and directs customers to cease communicating with GoodLeap. (FAC ¶¶ 40–47). However, the advertisements reproduced in the Complaint do not mention GoodLeap by name.

[1] Defendants dispute and deny GoodLeap's allegations and characterizations in the Complaint. Nothing in this Motion should be construed as an admission of any fact or allegation.

[2] The First Amended Complaint, Doc. No. 11, will be cited as (FAC ¶ _).

(FAC ¶¶ 29(a)-(g), 31, 33). The two blog posts that do reference GoodLeap use its name only generically, as an example of a solar lender, not as an advertisement inviting comparison between GoodLeap's financing products and Defendants' services. (FAC ¶¶ 60-61). While one landing page allegedly states, "No more Solar Payments!" in small print (FAC ¶ 33), the Complaint does not allege that any advertisement directs, instructs, or tells a consumer to stop making payments.

5. GoodLeap alleges that CALG works in conjunction with SCRC by accepting referrals from SCRC, sending generic cease-and-desist and demand letters to GoodLeap on behalf of customers, and lending the appearance of legitimate legal representation to SCRC's business model, while SCRC allegedly remains the primary point of contact for customers. (FAC ¶¶ 6, 47–54).

6. Critically, GoodLeap alleges that every affected borrower was already a GoodLeap customer, bound by an existing written loan agreement, before that borrower ever encountered SCRC's advertising or retained Defendants. (FAC ¶¶ 9, 24–25, 60–62). While GoodLeap complains its customers are instructed to cease loan payments after a consumer retains Defendants' services, by its own allegations it is not the advertisements that cause consumers to stop paying. Moreover, GoodLeap admits at least one customer stopped making payments *before* CALG sent any letter on her behalf and otherwise pleads only that customers defaulted "right around the time" letters were sent, without alleging dates or individualized

facts for the vast majority of the roughly one hundred customers the Complaint vaguely mentions. (FAC ¶¶ 12, 64–65).

7. Based on the foregoing allegations, GoodLeap contends that Defendants' conduct somehow gives rise to claims for false advertising under the Lanham Act, contributory false advertising, violation of FDUTPA, tortious interference with contractual relations, civil conspiracy, unauthorized practice of law, and declaratory judgment. (FAC ¶¶ 73–131). However, GoodLeap's claims fail for multiple reasons as argued herein.

## <u>LEGAL STANDARD ON A MOTION TO DISMISS</u>

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the Court must accept well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff, it is not required to accept legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). A complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to state a claim. *Iqbal*, 556 U.S. at 678. Where the well-pleaded facts do not permit the Court to infer

more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief and must be dismissed. *Id.* at 679. Accordingly, where a complaint fails to allege sufficient factual matter to state a plausible claim for relief, dismissal under Rule 12(b)(6) is appropriate. The Court may dismiss a Complaint with prejudice when amendment would be futile. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

## ARGUMENT FOR DISMISSAL

### I. GoodLeap's Own Allegations Preclude Causation Under the Lanham Act, FDUTPA, and Florida Tortious Interference Law.

Every count that requires GoodLeap to plead causation – Count I (Lanham Act false advertising), Count III (FDUTPA), and Count IV (tortious interference) – fails for the same reason: GoodLeap does not allege that any advertisement (for Lanham Act purposes) or act by Defendants (for FDUTPA or tortious interference purposes) caused a single customer to do anything she was not already free, and inclined, to do. GoodLeap's borrowers were already its customers, bound by existing loan agreements, before any of them encountered SCRC's advertising or retained CALG. (FAC ¶¶ 9, 24-25, 60-62). GoodLeap does not allege that any advertisement diverted a prospective customer; it alleges only that existing borrowers independently retained Defendants and stopped performing under contracts they had already signed. (FAC ¶¶ 40-47).

GoodLeap's own pleading forecloses the causal link it needs. GoodLeap concedes that at least one borrower stopped paying *before* CALG ever sent a letter on her behalf, a sequence that makes it a logical impossibility for that letter to have caused that default. (FAC ¶¶ 12, 65). As to the roughly one hundred remaining customers GoodLeap attributes to Defendants' conduct, the Complaint alleges only that those defaults occurred "right around the time" a letter was sent, but includes no dates, no individualized facts, nothing beyond bare temporal correlation. (FAC ¶ 64). Sequence is not causation, and a plaintiff's own complaint cannot plausibly allege that the Defendants caused the conduct of which it complains.

This single defect independently defeats causation under three separate legal standards. First, for Count I under the Lanham Act,[3] a plaintiff must show "economic or reputational injury flowing *directly* from the deception wrought by the defendant's *advertising*," and where the causal chain is too attenuated, the claim cannot stand. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132-34 (2014) (emphasis added).

That direct-injury requirement also defines the Act's "zone of interests": a plaintiff whose injury is derivative of a third party's independent decision, rather

[3] To state a claim for false advertising under the Lanham Act, a plaintiff must allege "(1) the defendant's statements were false or misleading; (2) the statements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) it has been, or likely will be, injured as a result of the false or misleading statement." *Sovereign Military Hospitaller Order v. Fla. Priory of the Knights Hospitallers*, 702 F.3d 1279, 1294 (11th Cir. 2012).

than a competitor's diverted sale, falls outside it, and a plaintiff who does not compete with the defendant "will often have a harder time establishing proximate causation." *Id.* at 131-34, 136. GoodLeap's alleged injury of "foregone revenue, increased servicing costs, and the expense of attempting to communicate with and re-engage customers" (FAC ¶ 68) is the loss of a creditor whose borrowers stopped paying, not the lost sale of a competitor whose customer was diverted to a rival. GoodLeap's reputational theory fares no better: it alleges SCRC's ads "characterize[] GoodLeap's loan products . . . in a negative and misleading light" (FAC ¶ 70) but identifies no advertisement that actually names or disparages GoodLeap's products, as opposed to promoting SCRC's own services.

Courts analyzing proximate cause in similar contexts have repeatedly dismissed claims resting on GoodLeap's theory. *Wyndham Vacation Ownership v. Reed Hein & Associates, LLC* held an injury was "too remote" and "not the type of interest the Lanham Act was intended to protect" where the instruction to consumers to stop paying their contracts came only after the defendant solicited and retained the customer, not from the challenged advertisement itself. No. 6:18-cv-02171-GAP-DCI, 2019 WL 2232241, at *3 (M.D. Fla. May 23, 2019).

*Wesley Financial Group, LLC v. Westgate Resorts, Ltd.*, reached the same result, and the Lanham Act claim was dismissed with prejudice, where the challenged ads, even if misleading, only prompted consumers to inquire about their

options to cease contractual performance rather than causing them to withhold trade. 746 F. Supp. 3d 1342, 1351-52 (M.D. Fla. 2024); *see also Orange Lake Country Club, Inc. v. Reed Hein & Assocs., LLC*, No. 6:17-cv-1542-Orl-78DCI, 2019 WL 7423517, at *14 (M.D. Fla. Oct. 4, 2019) (rejecting a "but for" theory linking challenged advertising to a cessation of payments as "too remote"). GoodLeap's Complaint has the same defect: the conduct it ties to its borrowers' defaults is CALG's letters and each borrower's independent choice, not reliance on any allegedly false advertisement. (FAC ¶¶ 6, 12, 64-65).

Second, causation under FDUTPA[4] (Count III) "must be direct, rather than remote or speculative," and a plaintiff cannot establish causation where the injury depends on the intervening, independent decisions of a third party. *Lombardo v. Johnson & Johnson Consumer Cos., Inc.*, 124 F. Supp. 3d 1283, 1290 (S.D. Fla. 2015). GoodLeap's own theory is that "Defendants' deceptive acts caused GoodLeap's Florida-based customers to stop making payments" (FAC ¶ 98), but the Complaint does not plead facts showing Defendants' conduct, rather than each customer's own intervening decision, directly caused that non-payment, and

[4] A FDUTPA claim has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 166-67 (Fla. 4th DCA 2015).

GoodLeap's own pleaded dates confirm the opposite for at least one example. (FAC ¶¶ 12, 65).

Finally, for tortious interference with a contract[5] (Count IV), Florida law requires the "intentional procurement" of a breach the contracting party would not otherwise have committed; a defendant is not liable where the party "already intended to breach" independent of the defendant. *Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla., Inc.*, 832 So. 2d 810, 814 (Fla. 2d DCA 2002); *See also ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1349 (11th Cir. 2025) (affirming dismissal of tortious interference claim that pleaded only "formulaic recitation of the elements" of the claim). Mere temporal proximity – payments stopping around the time a letter arrives – does not indicate active procurement, nor does GoodLeap allege when, how, or why Defendants procured any particular customer's breach. Its theory is equally consistent with the "obvious alternative explanation," that customers independently chose to stop paying after retaining Defendants for other reasons, and GoodLeap's own admission that at least one customer defaulted before receiving any letter forecloses the inference that Defendants procured that breach at all. (FAC ¶¶ 12, 64, 65). Because GoodLeap has

[5] To state a tortious interference with a contract claim, "a plaintiff must allege: (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damages to the plaintiff as a result of the breach of the relationship." *Chicago Title*, 832 So. 2d at 814.

not plausibly alleged the required element of causation, Counts I, III, and IV should each be dismissed.

## II. GoodLeap cannot plausibly allege that the advertisements were material to consumers' purchasing decisions.

For false advertising claims, the Lanham Act's purpose is to protect against unfair competition, not to address all injuries stemming from false advertisement. *Lexmark*, 572 U.S. at 131.

An allegedly false advertisement's impact on consumers is the crux of a false advertising claim. *It Works Mktg., Inc. v. Melaleuca, Inc.*, No. 8:20-cv-1743-T-KKM-TGW, 2021 WL 1650266, at *6 (M.D. Fla. Apr. 27, 2021) (dismissing false advertising claim under Lanham Act when complaint failed to allege deception to consumers). For that reason, "even demonstrably false statements that are irrelevant to consumer purchasing decisions are immaterial and cannot be the basis for a false advertising claim." *J-B Weld Co., LLC v. Gorilla Glue Co.*, 978 F.3d 778, 796–97 (11th Cir. 2020) (affirming summary judgment for defendants when plaintiff could not demonstrate the misrepresentations regarding qualities or characteristics of products had any impact on consumers' purchasing decisions).

The Complaint fails to plausibly allege the materiality element. *See Duty Free Ams., Inc. v. Estée Lauder Cos.*, 797 F.3d 1248, 1277 (11th Cir. 2015). Rather than alleging that SCRC's advertisements influenced consumers' decisions to purchase GoodLeap's products, the Complaint repeatedly alleges that SCRC specifically

targets **existing** customers who have already financed their solar systems through GoodLeap and are already bound by written loan agreements. (FAC ¶¶ 1, 8-9, 10, 24-25, 60-62). Thus, by GoodLeap's own allegations, the purchasing decision relevant to GoodLeap's alleged commercial injury had already occurred before consumers encountered the challenged advertisements. Rather than alleging that consumers were deceived into purchasing Defendants' services instead of GoodLeap's, GoodLeap alleges that existing borrowers later retained Defendants, stopped making payments, and ceased communicating with GoodLeap. (FAC ¶¶ 62-68, 77-80). GoodLeap essentially seeks to transform the Lanham Act into a federal tortious interference claim, but that is not a permissible use of the Lanham Act. *See Lexmark*, 572 U.S. at 129. Thus, GoodLeap has not and cannot allege that SCRC's advertisements impacted consumer's purchasing decision, and the claim should be dismissed with prejudice.

In addition, GoodLeap also pleads these elements in conclusory terms, alleging the advertising "has deceived and has the capacity to deceive a substantial segment of the consuming public" (FAC ¶ 77) and that "consumers are induced by these false representations to retain SCRC's services." (FAC ¶ 78). These are formulaic recitations of the elements of a claim that the Court may disregard, such that, at a minimum, dismissal without prejudice is warranted.

## III. GoodLeap fails to plausibly allege the materiality and knowledge elements of a contributory false advertising claim,[6] and Count II fails to the extent Count I fails.

Count II against CALG for contributory false advertising under the Lanham Act fails for three reasons. First, the Complaint does not plausibly allege that CALG materially participated in SCRC's advertising, as opposed to merely maintaining an ordinary business relationship with it. Second, the Complaint's allegations regarding CALG's knowledge of the challenged advertising are conclusory and insufficient. Third, because contributory liability is derivative, Count II necessarily fails because Count I fails.

### A. GoodLeap fails to plausibly allege that CALG materially participated in SCRC's advertising.

For contributory false advertising under the Lanham Act, a plaintiff must plausibly allege that "(1) a third party in fact directly engaged in false advertising that injured the plaintiff; and (2) the defendant contributed to that conduct either by

[6] Although the text of the Lanham Act does not provide a specific cause of action for "contributory" false advertising, based upon other tort principles, *Duty Free* recognized a contributory cause of action exists. CALG respectfully submits that *Duty Free* was incorrectly decided. Section 1125(a)(1)(B) should not be construed to recognize a cause of action for contributory false advertising because the statute contains no textual basis for imposing secondary liability. *See Acad. of Doctors of Audiology v. Int'l Hearing Soc'y*, 237 F. Supp. 3d 644, 666–67 (E.D. Mich. 2017) (observing that, although the Eleventh Circuit recognized contributory false advertising in *Duty Free*, it "appears to stand alone in that regard" and declining to recognize such a claim). Not only is it unsupported by the statute's text, a contributory false advertising claim is inconsistent with *Lexmark*'s proximate cause analysis, requiring "economic or reputational injury flowing *directly* from the deception wrought by the defendant's advertising." *Lexmark*, 572 U.S. at 133 (emphasis added). The Supreme Court has cautioned against an overly expansive interpretation of the Lanham Act, *Lexmark*, 572 U.S. at 129, which would improperly expand the scope of plaintiffs who could seek redress under it.

knowingly inducing or causing the conduct, or by materially participating in it." *Duty Free*, 797 F.3d at 1277.

"Material participation" requires that the defendant "actively and materially furthered the unlawful conduct" by inducing, causing, or otherwise working to bring about the false advertising. *Id.* Allegations that a defendant was merely "aware of and has not stopped" a third party's false advertising do not, without more, plausibly establish contributory false advertising. *Id.* at 1270.

In *Duty Free*, allegations that the defendant communicated directly with the third parties responsible for the false statements, shared information with them concerning its relationship with the plaintiff, and knew of the challenged statements, but failed to stop them, were insufficient to infer that the defendant knowingly induced, caused, or materially participated in the false advertising. *Id.* at 1258-61, 1278-79. Instead, it established nothing more than an ordinary business relationship. *Id.*

Here, GoodLeap does not plausibly allege that CALG materially participated in SCRC's advertising. The Complaint consistently identifies SCRC, not CALG, as the entity that created, disseminated, and controlled the allegedly false advertisements. (FAC ¶¶ 2–5, 27). Count II's central allegation is that CALG "knowingly contributes to and materially participates in SCRC's false advertising."

(FAC ¶¶ 46, 86–89). But those are legal conclusions, not factual allegations, that the Court need not credit.

The actual factual allegations against CALG fall far short of alleging material participation. The Complaint alleges that CALG accepted referrals generated by SCRC, received fees from those referrals, transmitted form demand letters after consumers retained Defendants, permitted SCRC to communicate with clients, and allegedly benefited from the relationship. (FAC ¶¶ 50, 64, 86-87, 89). None of this constitutes material participation in false advertising. The Complaint does not allege that CALG communicated with SCRC about the content of the challenged advertisements, directed or monitored SCRC's advertising, approved or reviewed the representations before publication, or otherwise worked to bring about the false advertising. Instead, GoodLeap's allegations describe an ordinary business relationship, which is not enough. *Id.* at 1279.

### B. GoodLeap pleads only conclusory allegations regarding CALG's knowledge of the allegedly false advertising.

The state-of-mind element requires facts showing CALG "intended to participate in" or "actually knew about" SCRC's false advertising. *Id.* at 1277. GoodLeap offers only conclusions that CALG has "full knowledge of the nature of SCRC's false and misleading advertising" and "cannot claim ignorance" because the advertising "is public, widespread, and the very mechanism by which CALG receives clients." (FAC ¶ 88). That the advertising is public and widespread shows,

at most, that CALG could have known of its existence, but not that CALG knew the advertisements were *false*, which is what the element requires. *Id.* These conclusory allegations are insufficient to state a viable claim. Thus, Count II must be dismissed.

**C. Count II fails because the predicate claim against SCRC in Count I is not plausibly pled.**

Contributory false advertising is derivative liability: there is nothing to contribute to unless a "third party in fact directly engaged in false advertising that injured the plaintiff." *Duty Free*, 797 F.3d at 1277. If the direct claim against SCRC is not plausibly pleaded, the contributory claim against CALG necessarily fails. *See Id*. at 1277-78. As set forth in Section I above, GoodLeap has not and cannot allege that SCRC's *advertising* proximately caused its injury, as required by *Lexmark*. Thus, like Count I, Count II should be dismissed with prejudice.

**IV. The FDUTPA claim and civil conspiracy claims are based upon fraud, yet fail to satisfy Rule 9(b)'s heightened pleading standard.**

Both Count III (FDUTPA) and Count V (civil conspiracy) are based upon fraud and are therefore subject to Rule 9(b)'s heightened pleading standard. (FAC ¶¶ 97, 109-113); *Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1293 (11th Cir. 2025) (holding "FDUTPA claims that sound in fraud must comply with Rule 9(b)"); *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1317 (S.D. Fla. 2014) (applying Rule 9(b) to civil conspiracy claims based on fraud). Rule 9(b) requires GoodLeap to allege "(1) the precise statements, documents, or misrepresentations made; (2) the

time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [plaintiff]; and (4) what the defendants gained by the alleged fraud." *Pop*, 145 F.4th at 1296.

Even when not based upon fraud, civil conspiracy claims require "clear, positive, and specific" allegations identifying what the "scheme" actually was and the terms of the actual agreement, not a mere recitation that defendants "combined, agreed, and conspired." *Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc.*, 79 So. 3d 855, 863 (Fla. 4th DCA 2012).[7] Neither count comes close to satisfying these standards.

Count III (FDUTPA) merely recites conclusory assertions and statutory elements without identifying which specific representation was false, when or where it was made, which borrower saw or relied on it (and when and how that occurred), or how it caused GoodLeap's alleged loss. GoodLeap's pleading problem is further compounded by its repeated lumping together of the Defendants without sufficiently alleging the separate conduct each is alleged to have engaged in. (FAC ¶¶ 92-99). Therefore, the FDUTPA claim must be dismissed.

[7] To state a claim for civil conspiracy, a plaintiff must allege (1) an agreement between two parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in furtherance of the conspiracy; and (4) damage to the plaintiff as a result of the acts performed pursuant to the conspiracy. *Eagletech*, 79 So. 3d at 863.

Count V (civil conspiracy) suffers from similar vagueness. GoodLeap alleges that SCRC and CALG "entered into an agreement, express or implied," to hold SCRC out as providing attorney-led services, induce borrowers to stop paying, and interfere with GoodLeap's contracts (FAC ¶ 110), but never identifies when that agreement was formed, its actual terms, or what conduct by either defendant constituted an offer, acceptance, or meeting of the minds on an unlawful object, as opposed to an ordinary, lawful referral arrangement. The remaining allegations that CALG and SCRC share an office address and some employees have cross-access to shared email domains (FAC ¶ 53) describes an unremarkable business relationship, not an unlawful one; that CALG accepts referrals, is compensated for them, and sends demand letters on clients' behalf (FAC ¶¶ 54, 111) describes CALG performing legal services for clients it was retained to represent, not an agreement to defraud GoodLeap; and Plaintiff's assertion that "neither Defendant could accomplish this scheme without the other" (FAC ¶ 112) is a conclusion about interdependence, not a factual allegation of when or how Defendants agreed to pursue an unlawful object. Mutual benefit from a business relationship is not conspiracy. Therefore, Count V must be dismissed.

## V. Count III (FDUTPA) fails as Plaintiff has not alleged any recoverable damage nor any plausible threat of future harm.

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or

commerce . . . ." Fla. Stat. § 501.204(1). GoodLeap fails to plausibly allege any actual damages recoverable under FDUTPA and fails to allege ongoing harm sufficient to obtain equitable relief.

**A. GoodLeap pleads only unrecoverable consequential damages.**

Count III must be dismissed as it seeks consequential damages that are not recoverable under FDUTPA. FDUTPA only permits the recovery of "actual damages," a term of art defined as "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 860 (11th Cir. 2023) (quotations omitted). "Lost profits are a 'quintessential example' of consequential damages." *Diversified Mgmt. Sols., Inc. v. Control Sys. Rsch, Inc.,* No. 15-81062-CIV, 2016 WL 4256916, at *5 (S.D. Fla. May 16, 2016) (quoting *Nyquist v. Randall*, 819 F.2d 1014, 1017 (11th Cir. 1987)). Competitive harm, lost sales, damage to business reputation, and loss of goodwill are also unrecoverable consequential damages. *BPI Sports, LLC v. Labdoor, Inc.*, 2016 WL 739652, at *6 (S.D. Fla. Feb. 25, 2016).

GoodLeap may rely upon *Diamond Resorts International, Inc. v. Aaronson*, which permitted a plaintiff to pursue unpaid promissory-note and fee amounts as "lost profits already suffered." 371 F. Supp. 3d 1088 (M.D. Fla. 2019). But *Diamond Resorts* relies upon cases that summarily conclude lost profits are available under

FDUTPA without analysis and without discussion of Eleventh Circuit precedent concluding lost profits constitute consequential damages. The court should decline to follow *Diamond Resorts* in light of Eleventh Circuit precedent finding lost profits are quintessential consequential damages. *Nyquist v. Randall*, 819 F.2d 1014, 1017 (11th Cir. 1987); *See also Apotex Corp. v. Hospira Healthcare India Private Ltd.*, No. 18-CV-4903 (JMF), 2019 WL 3802096, at *1 (S.D.N.Y. Aug. 13, 2019), *aff'd*, 827 Fed. Appx. 149 (2d Cir. 2020) (analyzing status of Florida law on lost profits under FDUTPA).

GoodLeap has alleged only unrecoverable consequential damages. It alleges that it has incurred damages of "financial losses," "foregone revenue, increased servicing costs, expense of attempting to communicate with and re-engage customers" and "harm to its business reputation, relationships with its clients, and goodwill." (FAC ¶¶ 68-70, 98). These are the classic categories of consequential damages unrecoverable under FDUTPA.

**B. GoodLeap alleges no real and immediate threat of future harm to support injunctive or declaratory relief.**

GoodLeap's FDUTPA count also seeks "permanent injunctive relief to prevent future violations" and "declaratory relief." (FAC ¶ 100). Both are prospective remedies, requiring GoodLeap to plead a threat of future injury that is real and immediate. *See Kurimski v. Shell Oil Co.*, 570 F. Supp. 3d 1228 (S.D. Fla.

2021) (dismissing FDUTPA claim seeking declaratory, injunction, and equitable relief when plaintiff failed to allege threat of future harm).

GoodLeap's allegations do not meet this standard. Its future-harm allegations are conclusory assertions of Defendants' ongoing conduct and disruption of customer and contractual relations. (FAC ¶¶ 71, 99). That is precisely the kind of "threadbare recital" a court disregards. The only concrete injury GoodLeap identifies are the payments its existing customers have already stopped making – a past injury that a prospective remedy cannot redress. (FAC ¶ 98). Any future injury to GoodLeap depends on a speculative chain: that Defendants will "deceive" still other GoodLeap customers, that those customers will independently choose to stop paying, and that GoodLeap will thereby lose additional payments. A threat that contingent is not the "certainly impending" injury Article III requires. The FDUTPA claim should be dismissed with prejudice.

## VI. Count IV (tortious interference) fails because it is insufficiently pleaded, regardless of any causation defect.

Count IV for tortious interference fails to plausibly allege facts, rather than legal conclusions and formulaic recitation of the elements of the claim. Generic allegations of "knowledge" and "procurement" are the kind of conclusory recitations a court must disregard at the pleading stage. *ECB USA*, 148 F.4th at 1348. The Complaint does not allege that Defendants ever saw, reviewed, or possessed the actual terms of any specific customer's loan agreement, as opposed to a general

awareness that GoodLeap extends solar financing. Nor does it identify a single instance in which SCRC or CALG communicated with a particular customer about that customer's specific payment obligations in a manner that could constitute the intentional act of procurement, as opposed to general marketing directed at the public. Knowledge of a category of contracts is not the same as knowledge of the particular contract allegedly interfered with, and generalized advertising is not the same as an intentional act aimed at inducing breach of an identified agreement. Thus, these elements are inadequately pled and the claim must be dismissed.

## VII. Count V (civil conspiracy) fails because there is no actionable underlying tort.

GoodLeap fails to state a claim for civil conspiracy because civil conspiracy is not an independent tort; it requires an underlying actionable wrong. *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997). Where the underlying claim fails, so does any conspiracy claim premised on it. *Wright v. Yurko*, 446 So. 2d 1162, 1164-65 (Fla. 5th DCA 1984) (finding that where the underlying cause of action is barred, there can be no actionable conspiracy to commit the same act). As argued herein, Plaintiff has failed to state any underlying cause of action, and therefore, conspiracy similarly fails.

## VIII. Count VI (for unauthorized practice of law) must be dismissed because the complaint fails to allege conduct previously determined by the Florida Supreme Court to constitute UPL and GoodLeap lacks standing to bring a UPL claim.

The Florida Bar, as an arm of the Florida Supreme Court, is vested with the exclusive power to bring unauthorized practice of law ("UPL") claims, subject to a narrow civil damages exception. *Goldberg v. Merrill Lynch Credit Corp.*, 35 So. 3d 905, 907-08 (Fla. 2010). In *Goldberg*, the Florida Supreme Court held that *victims* of UPL could seek to recover fees and damages caused by UPL, but it imposed a specific pleading requirement: the complaint "must state that this Court has ruled that the specified conduct at issue constitutes the unauthorized practice of law." *Id.* at 907. Where the alleged conduct presents a question of first impression, the claim must be dismissed without prejudice or stayed pending a determination by the Florida Supreme Court. *Id.* at 908; *See also Scharrer v. Fundamental Admin. Servs., LLC*, No. 8:12-CV-1855-T-30MAP, 2013 WL 3943156 at *4-5 (M.D. Fla. July 30, 2013) (noting that no court had relied upon *Goldberg* to find a sufficiently pleaded private right of action based on UPL). GoodLeap has not pled that the Florida Supreme Court has found the Defendants' specific conduct to be UPL.

Count VI also fails because a UPL claim runs to the party who received the unauthorized legal services, not to a third party who was never the purported client. The civil damages exception exists to compensate the *victim* of UPL for the harm caused by the unauthorized representation. *Goldberg*, 35 So. 3d at 907-08. But a UPL claim does not extend to third parties with no purported attorney-client relationship with the alleged unauthorized practitioner. *Sigma Fin. Corp. v. Inv. Loss*

*Recovery Services, Inc.*, 673 So. 2d 572, 573 (Fla. 4th DCA 1996) (dismissing UPL and FDUTPA claims, as "the deceptive trade practices, if any, were not directed at the appellants but instead were directed at ILRS and Sheen's 'clients.'"). Thus, Plaintiff lacks standing to bring a UPL claim, and dismissal with prejudice is warranted.

### IX. Count VII (declaratory judgment) fails because it is purely procedural and conveys no substantive rights, and regardless, is duplicative.

The Declaratory Judgment Act is procedural, not substantive, and cannot stand absent an underlying substantive cause of action. *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 199 (2014). Count VII depends entirely on Counts I-III, as the declaration GoodLeap seeks is the same relief it seems under the FDUPTA and Lanham Act claims. (FAC ¶ 130). If the Court dismisses Counts I-III or any portion thereof, Count VII should likewise be dismissed.

Additionally, as a matter within the court's discretion, "courts frequently decline to consider the duplicative grounds" of a declaratory count that requests the same relief and is redundant of an earlier claim. *Sec. Nat'l Ins. Co. v. Hendrik Uiterwyk, P.A.*, 725 F. Supp. 3d 1308, 1323 (M.D. Fla. 2024). Here, the claim adds nothing that is not already addressed by Counts I-III and should be dismissed.

## LEGAL STANDARD AND ARGUMENT FOR TRANSFER OF VENUE

In making a venue determination, the Court may consider extrinsic evidence, as the allegations of the Complaint are taken as true only if uncontroverted by

Defendants' sworn statements. *See Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990). Accordingly, the Declaration of CALG and the Declaration of SCRC are attached as **Exhibits A** and **B**, respectively.

## I. Venue is improper in the Middle District of Florida under 28 U.S.C. § 1406(a).

GoodLeap chose Florida through classic forum-shopping, relying on case law from the timeshare context that expands the Lanham Act beyond its text and congressional intent. *See, e.g., supra* footnote 6. Venue here is improper, and the action should be transferred to the District of Arizona under 28 U.S.C. § 1406(a), which directs that a case filed in the wrong district be dismissed or, in the interest of justice, transferred to any district or division in which it could have been brought.

Section 1391(b) permits suit only where a substantial part of the events or omissions giving rise to the claim occurred. That inquiry looks to the events that directly give rise to a claim and to the relevant activities of the defendant, not of the plaintiff. *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371–72 (11th Cir. 2003). The alleged conduct underlying GoodLeap's claims, i.e. Defendants' advertising, consumer intake, referral relationship, shared operations, and legal correspondence, originated with SCRC in Arizona and CALG in Nevada, not Florida. (Exs. A-B, ¶¶ 3-9). That some Florida consumers saw the advertising or retained Defendants shows only where consumers interacted with the conduct, not where the conduct occurred. Because the Complaint alleges no substantial part of the operative events in this

District, venue is improper under § 1391(b), and the Court should transfer the action to the District of Arizona, where it could have been brought.

## II. Alternatively, the action should be transferred to Arizona or Nevada under 28 U.S.C. § 1404(a).

Alternatively, section 1404(a) authorizes transfer to any district where the action might have been brought when transfer serves the convenience of parties and witnesses and the interest of justice, assessed as of filing. *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960).

### A. The action could have been brought in Arizona or Nevada.

SCRC's advertising and the parties' referral arrangement originated in Arizona, (Ex. B, ¶¶ 5, 9), supporting personal jurisdiction there over both Defendants and establishing Arizona as a district where a substantial part of the events occurred. Nevada is equally proper: CALG is a Nevada law firm operating from Las Vegas, owned by a Nevada LLC with a Nevada resident managing principal. (FAC ¶¶ 16, 47-54; Ex. A ¶ 3), Because the action could have been brought in either district, the Court must weigh convenience and justice through an individualized, case-by-case consideration. 28 U.S.C. § 1404(a); *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

### B. The § 1404(a) factors favor transfer.

In deciding a § 1404(a) motion, courts weigh: (1) convenience of witnesses; (2) access to proof; (3) convenience of the parties; (4) locus of operative facts; (5)

availability of compulsory process; (6) relative means; (7) plaintiff's choice of forum; (8) trial efficiency; and (9) the interests of justice. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). A plaintiff's forum choice receives minimal deference when the plaintiff does not reside in the chosen forum and when the operative facts occurred elsewhere. *Suomen Colorize Oy v. DISH Network L.L.C.*, 801 F. Supp. 2d 1334, 1338 (M.D. Fla. 2011). Here, nearly every factor favors transfer.

The parties and conduct are centered outside Florida: GoodLeap is a California LLC headquartered in Roseville, California (FAC ¶ 14); SCRC operates from Arizona and CALG operates from Las Vegas. (FAC ¶¶ 15–16, 47–54; Exs. A-B, ¶¶ 3-9) Florida's only tie is that a fraction of GoodLeap's borrowers allegedly reside here and viewed SCRC's advertising. (FAC ¶¶ 9–12, 24–25.) These facts drive each factor below.

**i. GoodLeap's choice of forum warrants minimal deference.** Deference to the plaintiff's chosen forum weakens when the forum is neither the plaintiff's home nor sufficiently connected to the controversy. *Suomen*, 801 F. Supp. 2d at 1338. GoodLeap is not a Florida citizen and has no principal place of business here (FAC ¶ 14), and the dispute centers on Arizona and Nevada conduct, not Florida. Its choice warrants limited weight.

**ii. Witness convenience and compulsory process favor transfer.** Witness convenience and the availability of compulsory process to secure the attendance of non-party witnesses weighs in favor of transfer. *See Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010); Fed. R. Civ. P. 45(c); *Manuel*, 430 F.3d at 1135 n.1. The witnesses with knowledge of Defendants' operations, advertising, intake, client communications, and legal correspondence are associated with SCRC's Arizona and CALG's Nevada operations. (FAC ¶¶ 16, 49–54, 86(a)–(g); Exs. A-B ¶¶ 3-10). GoodLeap identifies no Florida employee responsible for the challenged conduct; Florida's only potential witnesses are a limited number of consumers and two CALG attorneys, none of which are likely to testify about the creation of the advertising or the coordination between Defendants, which is the focus of the Complaint. (Ex. A ¶¶ 7, 10).

**iii. The sources of proof are in Arizona and Nevada.** "The place where the defendant's documents are kept weighs in favor of transfer to that location." *Suomen*, 801 F. Supp. 2d at 1339. The advertising materials, consumer files, business records, and communications are maintained through SCRC's Arizona and CALG's Nevada operations (Ex. A ¶ 5, 8; Ex. B ¶ 7); GoodLeap's records are in California; and the Complaint identifies no meaningful evidence in Florida.

**iv. Florida is not the locus of operative facts.** The locus of operative facts is determined by the events directly giving rise to the claims. *Jenkins Brick*, 321 F.3d

at 1371. The gravamen of the Complaint is that Defendants created and disseminated the challenged advertising, enrolled consumers, and sent demand letters to lenders. (FAC ¶¶ 15-16, 27-58.) That alleged conduct originated principally from SCRC's Arizona office (Ex. B ¶ 3-10) and any injury to GoodLeap is centered in California, not Florida.

**v. Party convenience favors transfer.** Florida is not the home forum of any party, so absent transfer, every party is forced to litigate where none is located. Arizona and Nevada, by contrast, are home to Defendants. (Exs. A-B, ¶¶ 3-10). GoodLeap, one of the largest residential solar lenders in the United States that has facilitated financing to homeowners nationwide (FAC ¶ 23), must travel regardless and can litigate anywhere. Transfer places the case in a forum substantially closer to the parties and alleged conduct rather than merely shifting inconvenience. *See Van Dusen*, 376 U.S. at 616.

**vi. The interests of justice favor transfer.** Section 1404(a) promotes efficient adjudication in the most convenient forum. *Van Dusen*, 376 U.S. at 616. Arizona has a substantial interest in claims concerning conduct operating from that state, Florida's connection is minor, and GoodLeap's interests as a California entity are untethered to this District. (Exs. A-B ¶¶ 3-10). Transfer to the District of Arizona, or alternatively the District of Nevada, best serves the interests of justice.

For these reasons, the Court should transfer this action under 28 U.S.C. § 1406(a) or § 1404(a).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety. To the extent the Complaint is not dismissed, the Court should transfer this action to the United States District Court for the District of Arizona or the District of Nevada pursuant to 28 U.S.C. §§ 1406(a) or 1404(a).

WHEREFORE, Defendants respectfully request that the Court dismiss the Complaint with prejudice, or alternatively, transfer venue, award Defendants their attorneys' fees and costs, and grant any other and further relief.

## LOCAL RULE 3.01(G) CERTIFICATE

I HEREBY CERTIFY that on July 20, 2026, undersigned conferred in good faith with counsel for Plaintiffs on the relief requested herein by Zoom, but the issues could not be resolved.

*/s/ Lauren M. Reynolds*
C. Andrew Roy, Esquire
Florida Bar No.: 91629
aroy@whww.com
Lauren M. Reynolds, Esquire
Florida Bar No.: 112141
Lreynolds@whww.com
Timothy J. Kiley, Esquire
Florida Bar No.: 44352
Tkiley@whww.com

WINDERWEEDLE, HAINES, WARD
& WOODMAN, P.A.
329 N. Park Avenue, Second Floor
Winter Park, FL 32789
Post Office Box 880 (mailing address)
Winter Park, FL 32790-0880
(407) 423-4246
(407) 645-3728 (facsimile)
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 23, 2026, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF filing system, which will serve a copy of same to all counsel of record.

*/s/ Lauren M. Reynolds*
Lauren M. Reynolds, Esquire

# EXHIBIT A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GOODLEAP, LLC, a California limited liability company,

Plaintiff,

v.

SOLAR CANCELLATION RESOURCE CENTER LLC, a Wyoming limited liability company; and CONSUMER ADVOCACY LAW GROUP, a Nevada law firm,

Defendants.
_______________________________________/

Case No. 6:26-cv-01072-PGB-NWH

**DECLARATION OF CALG IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE**

1. I am over 18 years of age, of sound mind and otherwise competent to make this Declaration. The facts set out in this Declaration are based on my personal knowledge.

2. My name is Richard Fonbuena, and I am the owner and managing attorney of Defendant Consumer Advocacy Law Group ("CALG"). I submit this Declaration in support of Defendants' Motion to Transfer Venue.

3. CALG is a law firm based in Las Vegas, Nevada, with its office at 350 South Rampart Blvd, Suite 346, Las Vegas, Nevada 89145. CALG is the d/b/a of Fonbuena Law Firm, Chtd., and I am the owner of CALG.

4. CALG conducts its law practice from its Las Vegas, Nevada office, and has attorney employees in states other than Nevada. For example, CALG employs two Florida attorneys. Attorneys access client files and correspond with clients through cloud-based systems, including MyCase.

5. CALG maintains no office in Florida. CALG does not maintain any business records or office space in Florida.

6. After attorney review, the demand and cease-and-desist letters to lenders that are referenced in this action were sent by CALG personnel working from CALG's Las Vegas, Nevada office.

7. The CALG personnel with knowledge of the facts relevant to this action — including the preparation and transmission of demand letters, intake procedures, and CALG's business operations — primarily reside and work in Nevada. With the exception of the two Florida attorney employees, none of these individuals reside or regularly work in Florida.

8. CALG's records that may be relevant to this litigation are maintained from CALG's Las Vegas office and are not maintained in Florida.

9. To the extent CALG communicates or coordinates with SCRC regarding referred matters, those communications are handled through CALG's personnel working from its Nevada office.

10. Requiring CALG and its witnesses to litigate this action in Florida would impose substantial burden and expense. Litigating in Florida would require CALG's attorneys and employees with relevant knowledge to travel across the country for hearings, depositions, and trial, disrupting CALG's law practice and increasing litigation costs. By contrast, litigating in the Nevada, or even Arizona, would substantially reduce those burdens because CALG, its witnesses, and its records are located there.

I declare under penalty of perjury that the foregoing is true and correct.

Signed by:
Richard Fonbuena
DE2F2E04F0BF401...

Richard Fonbuena, Managing Attorney
Executed on July 20, 2026

# EXHIBIT B

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GOODLEAP, LLC, a California limited liability company,

Plaintiff,

Case No. 6:26-cv-01072-PGB-NWH

v.

SOLAR CANCELLATION RESOURCE CENTER LLC, a Wyoming limited liability company; and CONSUMER ADVOCACY LAW GROUP, a Nevada law firm,

Defendants.
_______________________________________/

**DECLARATION OF SCRC IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE**

1. I am over 18 years of age, of sound mind and otherwise competent to make this Declaration. The evidence set out in the foregoing Declaration is based on my personal knowledge.

2. My name is Gabriella Vidal Corrales, and I am President of Defendant Solar Cancellation Resource Center LLC ("SCRC"), and I submit this Declaration in support of Defendants' Motion to Transfer Venue.

3. SCRC is a limited liability company organized under the laws of the State of Wyoming. Its principal business address is 9160 E. Bahia Drive, Suite 100, Scottsdale, Arizona.

4. SCRC conducts its business operations from its office in Arizona. SCRC maintains no office, employees, or business operations in Florida. SCRC's management, marketing, customer intake, and consumer communications are conducted by personnel working from its Arizona office.

5. The advertising and marketing that are the subject of this action are created, reviewed, approved, and disseminated by SCRC personnel working from SCRC's Arizona office. SCRC's customer intake procedures and communications with prospective and existing consumers are likewise conducted by personnel working from that office.

6. The SCRC personnel with knowledge of the facts relevant to this action—including SCRC's advertising, marketing, customer intake procedures, and general business operations—reside and work in Arizona. They include Tyler Ibarra, Business Development Director, and Viri Hernandez, VP of Marketing and Operations. None of these individuals reside or regularly work in Florida.

7. SCRC's records relevant to this litigation might include advertising and marketing materials, customer intake records, and business records. Those records are maintained from SCRC's Arizona office and are not maintained in Florida.

8. SCRC personnel responsible for creating and disseminating the advertising challenged in this action, maintaining customer records, and

communicating with consumers regularly work from Arizona and would be expected to testify regarding the allegations in the Complaint.

9. To the extent SCRC communicates or coordinates with CALG regarding referred matters, those communications are handled through SCRC personnel working from its Arizona office.

10. Requiring SCRC and its witnesses to litigate this action in Florida would impose substantial burden and expense, including requiring SCRC personnel to travel across the country for hearings, depositions, and trial, disrupting SCRC's ordinary business operations, and increasing litigation costs. Litigating this action in Arizona, or even Nevada, would substantially reduce those burdens because SCRC's personnel, operations, and records are located in Arizona.

I declare under penalty of perjury that the foregoing is true and correct.

Gabriella Vidal Corrales, President
Executed on July 20, 2026